UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| NATHANIEL ALEXANDER,<br>    Petitioner, | Case No. 1:10-cv-41 |
| | Dlott, C.J. |
| vs. | Bowman, M.J. |
| WARDEN, ROSS CORRECTIONAL<br>INSTITUTION,<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel. This matter is now before the Court on the petition and respondent's return of writ with exhibits. (Docs. 1, 4).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

The incident, which resulted in the criminal proceedings challenged by petitioner in the instant action, occurred on July 6, 2003, when the victim was shot and killed during a brawl at an "after hours party" in a Portsmouth, Ohio, apartment. (*See* Doc. 4, Ex. 19, p. 6). The Ohio Court of Appeals, Fourth Appellate District, has provided the following detailed summary of the procedural background leading up to petitioner's trial and conviction:[1]

> On July 16, 2003, the State filed a complaint against Alexander in the Portsmouth Municipal Court charging him with one count of murder, under case number 03-CR-1806. Alexander was arrested on a warrant on August 11, 2003, and he appeared in court later that day. After the court established a $50,000 surety bond, Alexander posted it and was released that same day. On August 15, 2003, Alexander waived his right to a preliminary hearing, and the case was bound over to the Scioto County

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

grand jury and assigned Scioto County Common Pleas Court No. 03-CR-653. That court continued his bond, ordering him to be held under a $50,000 surety bond "for the appearance in the Scioto Court of Common Pleas for trial pursuant to indictment by the Scioto County Grand Jury." On November 19, 2003, the grand jury returned a report to the court indicating that it failed to return an indictment on that case. Specifically, the report stated: "Against the following named accused persons, who have been held to answer, no indictment has been found (Revised Sec. 2939.23) to-wit: *** 03-CR-653 Nathaniel J. Alexander." The court discharged the Grand Jury after receiving the report.

On August 26, 2005, a new Scioto County grand jury indicted Alexander on one count of aggravated murder, along with a firearm specification, under case number 05-CR-1247. It is undisputed that the indictment was premised upon the same facts as the initial murder charge. On November 9, 2006, Alexander was arrested in Franklin County, Ohio, and held on the warrant and two probation violations. Shortly thereafter, the Franklin County Common Pleas Court ordered Alexander to be held without bond and instructed Scioto County officials to pick him up within five days. However, that did not occur.

After Alexander was committed to prison on his Franklin County charges, he was transported to Scioto County for his March 2, 2007 arraignment in the present case. There, Alexander entered a not guilty plea and received appointed counsel. Defense counsel filed a request for a bill of particulars and a request for discovery. After a pretrial hearing, the court set the trial date for June 4, 2007. However, the court continued the trial date because the State had not provided the defense with discovery. After new counsel filed a notice of appearance, the court ultimately scheduled the trial for August 6, 2007. Then, on July 26, 2007, new counsel filed a motion to dismiss, arguing that the State had violated Alexander's constitutional and statutory rights to a speedy trial. On November 7, 2007, the court denied the motion to dismiss and set the matter for trial. In denying the motion, the court stated:

> This Court finds that on November 29, 2003 the Scioto County Grand Jury returned a "no bill" in case number 03-CR-1806. The defendant was indicted in this case on August 26, 2005 and arraigned on March 2, 2007.
>
> This Court finds there was no charge pending against the defendant from November 19, 2003 through August 26, 2005 and the State of Ohio is not charged with this time pursuant to O.R.C. 2945.71.
>
> The Court further finds the defendant's motion as it pertains to the delay from August 26, 2005 until March 2, 2007 is not well taken in that defendant had felony charges pending in another jurisdiction and was a fugitive avoiding apprehension.

Finally, on February 6, 2008, the matter proceeded to trial.

2

(Doc. 4, Ex. 19, pp. 4-6; *see also* Exs. 1-10).

On February 8, 2008, following the trial before a jury, petitioner was found guilty of the lesser offense of murder and the firearm specification. (Doc. 4, Ex. 11).

Thereafter, on February 14, 2008, a hearing was held, in which the motion to dismiss "for lack of speedy trial" was reopened so that petitioner could present "additional information" concerning the matter, which arose during the trial. (Doc. 4, Ex. 12, Tr. 2). Petitioner called James Charles, a Portsmouth police detective, to testify regarding a comment made in a 2006 audio-taped interview with a witness, which was played during the trial, "about events that happened in 2003 with regard to the Grand Jury." (Doc. 4, Ex. 12, Tr. 2, 4-5). Specifically, Charles told the witness that although he "thought there would be enough to indict" in 2003, "the prosecutor would not permit the Grand Jury to vote" based on concerns about witnesses who had been subpoenaed but did not appear to testify before the grand jury. (Doc. 4, Ex. 12, Tr. 7-9). Charles testified that although he "did not know for sure," he was "under the impression" at the time of the witness-interview that the grand jury did not vote because he had not seen any "information as to whether or not they ever returned a true bill or a no bill." (Doc. 4, Ex. 12, Tr. 9-10).

On cross-examination by the prosecutor, Charles was presented with a copy of the November 19, 2003 "Report of Grand Jury," which stated that no indictment against petitioner "has been found." (Doc. 4, Ex. 12, Tr. 12-13 & "Joint Exhibit I"). After Charles reviewed the document, he testified that upon "seeing no indictment," his original assumption regarding the 2003 grand jury matter was "incorrect." (Doc. 4, Ex. 12, Tr. 13). Charles testified further that "it was common" in 2003 not to hear back about a case which did not result in an indictment. (Doc. 4, Ex. 12, Tr. 13-14). He also stated that he had not seen the November 19, 2003 grand jury report when he commented in the 2006 witness-interview about the 2003 grand jury proceedings. (Doc. 4, Ex. 12,

3

Tr. 16). When asked on redirect examination why he believed at the time of the interview that "the prosecutor would not let the Grand Jury vote on this," Charles responded:

> The fact that I was, again, searching the Common Pleas Court website. It never really specified, I don't think, at that time whether there had been indictment or not and the fact that no one from the prosecutor's office ever really told me that they chose not to indict or they did indict or they passed on it so I just assumed....

(Doc. 4, Ex. 12, Tr. 16-17). At the close of the hearing, the court ruled as follows: "Based on the evidence that we've been presented here in the courtroom, I find no new evidence which would change my position. I stay then with the ruling that the defendant's Motion to Dismiss is not well taken." (Doc. 4, Ex. 12, Tr. 25; *see also* Ex. 13).

On February 15, 2008, the trial court issued a Judgment Entry sentencing petitioner to a term of imprisonment of fifteen (15) years to life for the murder offense, to be served consecutively to a three (3) year prison term imposed for the firearm specification. (Doc. 4, Ex. 14).

## State Direct Appeal Proceedings

Petitioner's trial counsel filed a timely appeal on petitioner's behalf to the Ohio Court of Appeals, Fourth Appellate District. (Doc. 4, Ex. 15). In the appellate brief, he raised three assignment of errors, including the following claim:

> The trial court erred in refusing to dismiss the charge on the basis that the defendant had been deprived of his rights of speedy trial pursuant to O.R.C. §2945.71, et seq., Sixth and Fourteenth Amendments of the United States Constitution and Article I Section II of the Ohio Constitution.

(Doc. 4, Ex. 16). On March 24, 2009, the Ohio Court of Appeals issued a Decision and Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment. (Doc. 4, Ex. 19).

Petitioner's counsel next filed a timely appeal on petitioner's behalf to the Ohio Supreme Court. (Doc. 4, Ex. 20). In the memorandum in support of jurisdiction, he asserted the following

4

claim as the sole proposition of law:

> Where a defendant has been charged and posted a bond on a criminal matter and that charge remains pending for a period in excess of two years without any action by the defendant to delay or prevent the matter to proceed in accordance with the requirements of the Ohio Revised Code, that delay mandates that the charge and any charges arising out of the same event against the defendant be dismissed as the delay deprives the defendant of his speedy trial rights as defined under the Constitution of the State of Ohio under O.R.C. §2945.71 et seq., and the Sixth and Fourteenth Amendments of the United States Constitution.

(Doc. 4, Ex. 21). On July 29, 2009, the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (Doc. 4, Ex. 23).

## Federal Habeas Corpus

The same attorney who represented petitioner in the state trial and appellate proceedings filed the instant petition on petitioner's behalf on January 25, 2010. Petitioner claims as the sole ground for relief that "his constitutional right to a speedy trial has been violated by the proceedings within the state Court." (Doc. 1, p. 4). He alleges the following facts in support of his claim of constitutional error:

> The Defendant was arrested and posted bond in August of 2003. That bond continued to be in place and the charge pending with no journal entry dismissing that case for a period in excess of four years. In August of 2005, the Defendant was indicted for the same charge in Scioto County under case number 05CR001247 and the State exercised no due diligence and the Defendant was not brought to arraignment on the new charge until March of 2007, a period of 18 months from the return of the second indictment and a period approaching four years from the time of his original arrest.

(Doc. 1, pp. 4-5).

In the return of writ filed in response to the petition, respondent concedes that petitioner "fairly presented his sole habeas ground for relief before the Ohio courts" and, therefore, that the claim is subject to review on the merits. (Doc. 4, Brief, p. 7).

5

## II. PETITIONER IS NOT ENTITLED TO RELIEF ON HIS SPEEDY TRIAL CLAIM

In this federal habeas case, the applicable standard of review for addressing the merits of petitioner's constitutional claim of a speedy trial violation is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes,* __ U.S. __, 130 S.Ct. 1171, 1173 (2010). "[A] federal habeas court reviewing the state-court judgment must apply the law that controlled 'at the time his state-court conviction became final.'" *Miller v. Stovall,* 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams v. Taylor,* 529 U.S. 362, 390 (2000)), *petition for cert. filed,* 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010) (No. 10-851).

In addition, the "contrary to" and "unreasonable application" clauses set forth in 28 U.S.C. § 2254(d)(1) have independent meanings:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.... The focus on the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and ... an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted). Under § 2254(d)(1)'s "unreasonable

6

application" clause, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

Here, the Ohio Court of Appeals was the last state court to issue a reasoned decision addressing petitioner's speedy trial claim, which was raised to and addressed by the court both as a state statutory speedy trial issue and as a federal constitutional claim. (*See* Doc. 4, Ex. 19, pp. 8-23).

The court first addressed petitioner's speedy trial right under the state statute, Ohio Rev. Code § 2945.71, and found that the time in which the State was required to bring petitioner to trial began to run on August 12, 2003, the day after he was first arrested and released on bail. (Doc. 4, Ex. 19, pp. 9-10). The court also found, as both parties agreed, that the statutory time charged to the State ran for 100 days until November 19, 2003, the date the grand jury issued its report to the court. (Doc. 4, Ex. 19, p. 10). However, the court disagreed with petitioner's position that the charge remained pending for purposes of calculating speedy-trial time under the statute "during the time between the grand jury's initial 'no bill' and the subsequent indictment." (Doc. 4, Ex. 19, pp. 10-11). In rejecting petitioner's argument, the court reasoned in pertinent part:

> The term "no bill" is not defined in Chapter 2939 [of the Ohio Revised Code, which sets forth the duties and responsibilities of the grand jury]. However, as used in R.C. 2953.51 to R.C. 2953.55, which address the sealing of records after a not guilty finding, dismissal of proceedings or no bill, the term "no bill" means "a report by the foreperson or deputy foreperson of a grand jury that an indictment is not found by the grand jury against a person who has been held to answer before the grand jury for the commission of an offense." R.C. 2953.51. Using this definition, we conclude the grand jury's report to the court indicating that no indictment had been found against Alexander constituted a "no bill." Thus, the grand jury issued a "no bill" against Alexander on November 19, 2003, and the State failed to obtain the

7

necessary indictment against Alexander as of that date. Likewise, it appears from the report that the court dismissed the Grand Jury on that date.

Under Article I, Section 10 of the Ohio Constitution, "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." As we have previously held, it is well-settled law that "[t]here can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation...." Thus, a defendant cannot be tried, convicted or punished for a crime without a formal and sufficient indictment or information.... Because a proper indictment is required in order for the trial court to proceed with jurisdiction over the matter, we conclude that a court does not retain jurisdiction over a charge bound over to the grand jury when the grand jury issues a "no bill" and is discharged.

Here, the State failed to obtain the required indictment against Alexander when the grand jury issued its "no bill." And, the trial court lost jurisdiction of the charge against Alexander, i.e., the murder charge bound over to the grand jury, after it discharged the grand jury....

While Alexander correctly contends that neither the State nor the trial court filed a dismissal entry for case number 03-CR-653, we conclude the case terminated automatically by operation of law when the common pleas court lost jurisdiction by virtue of the discharge after the "no bill." In other words, while "Case No. 03-CR-653" remained open in the court's docket, it was a legal nullity at that point. And accordingly, there was no charge "pending" against Alexander for purposes of his speedy trial rights.

(Doc. 4, Ex. 19, pp. 12-14) (citations omitted).[2]

The state appellate court, therefore, agreed with the trial court's finding that there was no charge pending against petitioner from the time of the grand jury's "no bill" and discharge on November 19, 2003 through August 26, 2005, the date of his subsequent indictment for aggravated murder, which could be charged to the State for speedy trial purposes under Ohio Rev. Code § 2945.71. (Doc. 4, Ex. 19, pp. 15-16). In the absence of any other arguments by petitioner under Ohio's speedy trial statute, the court concluded that "the total time charged against the State from

---

[2]The state appellate court also rejected petitioner's contention that the statutory speedy trial time continued to run following the "no bill" because the court never officially released him from bail. (Doc. 4, Ex. 19, p. 14). The court reasoned: "When the grand jury failed to indict Alexander and the murder charge was no longer pending against him, his bail obligations were extinguished by operation of law." (Doc. 4, Ex. 19, p. 15).

8

the day following Alexander's initial arrest and his subsequent indictment is 100 days," and that petitioner's "statutory right to a speedy trial" was not violated. (Doc. 4, Ex. 19, p. 16).

The Ohio Court of Appeals turned next to petitioner's federal constitutional speedy trial claim. In addressing the assignment of error, the court made findings of fact, which are presumed correct,[3] and ruled in relevant part as follows:

> Alexander ... contends that the State failed to act diligently by allowing his case to remain pending for over two years before finally acquiring an indictment and then allowing it to remain pending for another 18 months prior to his arraignment. He argues that this "presumptively prejudicial" delay violated his constitutional right to a speedy trial.
>
> In analyzing whether an accused has been denied his constitutional right to a speedy trial, a court must consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right; and (4) prejudice to the accused. *Barker v. Wingo* (1972), 407 U.S. 514, 530.... None of these four factors is determinative of whether an accused suffered a violation of his constitutional right to a speedy trial. *Id.* at 532. Instead, the court must consider the factors collectively, i.e., by weighing the conduct of both the State and the defendant. *Id.*
>
> The United States Supreme Court has recognized that the first factor, length of delay, involves a double inquiry. *Doggett v. United States* (1992), 505 U.S. 647, 651.... First, an accused must show that the length of the delay was "presumptively prejudicial" in order to trigger the *Barker* analysis. *Id.* at 651-52. Once the *Barker* analysis is triggered, length of delay, beyond the initial threshold showing, is again considered and balanced against the other relevant factors. *Id.* at 652.
>
> As the *Doggett* decision noted, courts generally find post-accusation delay to be "presumptively prejudicial" as it approaches one year. *Doggett* at 652, fn. 1. The Supreme Court of Ohio has held that the filing of a criminal complaint triggers the "post-accusation" speedy trial inquiry under *Barker*.... Here, the State filed its initial complaint against Alexander in July 2003, but the case did not proceed to trial until February 2008. Because this post-accusation delay exceeded one year, we find that it was presumptively prejudicial. However, that finding does not end our inquiry.... Rather, it merely triggers the *Barker* analysis.
>
> We will first address Alexander's claim concerning the delay between his initial arrest in August 2003 and his indictment in August 2005. We begin our analysis by noting that the length of the delay is approximately two years. However, we will

---

[3]*See supra* p. 1 n.1.

consider and discuss this factor together with the second factor, the reason for the delay.

The United States Supreme Court has recognized that different weights are to be assigned to different reasons for delay. *Doggett* at 657, citing *Barker* at 531. Concerning negligence, the Court stated:

> Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies with its protractedness *** and its consequent threat to the fairness of the accused's trial. *** To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice.

*Id.* The Court also noted, however, that pre-trial delay is often both "inevitable" and "wholly justified" noting, for example, that the government may need time to "collect witnesses against the accused." *Id.* at 656.

Alexander does not contend that the State acted with a deliberate intent to harm the defense in failing to obtain an indictment; rather, he claims the State failed to exercise "due diligence." The State contends that it had a justifiable reason for the delay because witnesses refused to cooperate with the investigation. The record shows that the grand jury returned a "no bill" approximately three months after Alexander was arrested. The record also suggests that prior to his indictment, witnesses failed to cooperate with the investigation. Detective Charles testified at trial that only after they got a "major break" in the case in mid 2004 when [a witness] came forward with information, did the investigation accelerate. Moreover, during the hearing on Alexander's motion to dismiss, Detective Charles testified that he appeared before the grand jury in 2003 and testified concerning this case. He also testified that he attempted to locate witnesses to appear before the grand jury, that he had difficulties with certain witnesses, and that he and other officers and investigators attempted to locate witnesses for different grand jury dates in 2003. Thus, it appears that at least some of the delay resulted from the State's legitimate investigational concerns and its inability to "collect witnesses." Prior to indicting Alexander, the State was entitled to ascertain that it would have enough evidence to proceed to trial.... Even if we assume that the State did not act as diligently as it should have in this case, we conclude that this factor does not weigh heavily against the State because, given the circumstances, the 2-year delay was not so protracted or intolerable as to warrant relief absent some particularized trial prejudice.

As for the third factor, Alexander did not assert his right to a speedy trial until after he was arraigned in 200[7]. Under the circumstances of this case, however, we will assign no fault to him for failing to assert his speedy trial rights during the 2-year delay prior to his indictment. Alexander clearly knew that the State had filed its initial complaint against him in July 2003 when he was arrested the following month and released on bail, thus triggering the "post-accusation" delay. However, the grand jury subsequently issued a "no bill" against Alexander, and as we have previously determined, the court did not have jurisdiction over any pending charges against Alexander until his later indictment. However, as discussed in more detail below, Alexander did not assert his speedy trial rights upon learning of the indictment; rather he waited several months until after his arraignment. Accordingly, we find that this third factor weighs slightly against Alexander.

The final factor we must consider is the prejudice to the accused. In *Barker*, the United States Supreme Court identified three interests that the speedy trial right is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker* at 532. The first interest is not implicated here because Alexander was not incarcerated during the time between his initial arrest and his indictment. Second, while Alexander may have experienced anxiety and concern following his initial arrest, the grand jury returned a "no bill" against him within approximately three months. Any resulting anxiety should have been minimal. As for the last interest, Alexander does not allege that the delay impaired his ability to defend himself. Indeed, Alexander fails to allege that he suffered any actual prejudice as a result of the post-accusation delay. Thus, this factor weighs heavily against Alexander.

Carefully balancing these factors, we conclude that Alexander did not suffer a violation of his constitutional right to a speedy trial as a result of the 2-year delay between his arrest and indictment.

Next, we turn to Alexander's claim concerning the delay between his indictment and his arraignment. Again, we begin our *Barker* analysis by considering the length of this 18-month delay, together with the reason for the delay. Alexander does not argue that the State acted intentionally; he simply alleges that the State failed to exercise "due diligence." The State, on the other hand, contends that during this time Alexander was a fugitive from justice and was later incarcerated on other charges.

We look first to the reason for the delay between his indictment and his subsequent arrest. The record shows that a warrant was issued for Alexander's arrest following his indictment, but the record is unclear concerning what steps the State took [to] serve the warrant on Alexander. However, at the hearing on the motion to dismiss, Detective Charles testified that he was involved in trying to get the warrant served. He also testified that he was present with a fugitive task force in Columbus when Alexander was served with the indictment (or the probation violation stemming from the indictment). In its decision overruling his motion to dismiss, the trial court found

>Alexander was a "fugitive avoiding apprehension" during this time, a finding Alexander does not dispute. Where a defendant himself causes the delay by absconding and the government uses reasonable diligence in pursuing him, a speedy trial claim rings hollow. *See Doggett* at 656. Accordingly, we find that Alexander was more to blame than the State for the delay between his indictment and his subsequent arrest.
>
>Next we consider the reason for the 4-month delay between his arrest and arraignment. Alexander contends that shortly after his arrest at the Rule 4 hearing in Franklin County, the court ordered Scioto County to transfer Alexander back to Scioto County within five days but that he nonetheless remained in Franklin County jail on the probation violations and was eventually sent to prison on these other charges. The State offers no explanation for the delay other than the fact that Alexander was held on other charges and later sent to prison during this time. Based on our review of the record, we conclude that the State did not act as diligently as it could have during this time. Without a justifiable reason for the delay, we find that the State was more to blame for this delay than Alexander.
>
>Concerning the third factor, again we note that Alexander did not assert his right to a speedy trial until after his arraignment. However, the record clearly shows that he had knowledge of the indictment against him in November 2006 when he was arrested and held on the warrant in this case. Specifically, on November 13, 2006, he appeared in court for a hearing concerning the arrest warrant in this case. Furthermore, despite the fact that he had knowledge of the indictment, the record shows that Alexander never requested final disposition of his indictment under R.C. 2941.401[, which is a "mechanism for a defendant who is incarcerated on a different conviction to demand the State to proceed with unresolved and outstanding charges,"] while he was incarcerated on the other charges. Thus, we conclude that his failure to assert his speedy trial rights upon learning of the pending indictment weighs against Alexander.
>
>Looking at the final factor, we must consider the prejudice to Alexander by reviewing the three interests that the speedy trial right is designed to protect. Although Alexander was incarcerated during this time, he was also being held on probation violations and was then sent to prison on those charges. Thus, his confinement does not amount to oppressive pretrial incarceration. Second, while Alexander may have experienced some anxiety and concern during this time, we conclude it was minimal in light of the fact that he never requested a final disposition of his indictment in this case under R.C. 2941.401. Third, Alexander does not even allege, let alone establish, that the delay impaired his defense or otherwise resulted in any actual prejudice.
>
>Again, after carefully balancing the *Barker* factors, we conclude that Alexander did not suffer a violation of his constitutional right to speedy trial.

(Doc. 4, Ex. 19, pp. 16-23) (state case citations and footnote omitted).

The Ohio Court of Appeals correctly identified the applicable standard of review adopted in *Barker v. Wingo,* 407 U.S. 514 (1972), and followed in *Doggett v. United States,* 505 U.S. 647 (1992), in addressing the constitutional issue. As the state appellate court recognized, the Sixth Amendment right of the accused to a speedy trial begins at the time of "arrest, indictment, or other official accusation" and involves a fact-intensive inquiry requiring the balancing of (1) "whether [the] delay before trial was uncommonly long;" (2) "whether the government or the criminal defendant is more to blame for the delay;" (3) "whether, in due course, the defendant asserted his right to a speedy trial;" and (4) "whether he suffered prejudice as the delay's result." *Doggett,* 505 U.S. at 651, 655; *see also Wilson v. Mitchell,* 250 F.3d 388, 394 (6th Cir. 2001).

As the Ohio Court of Appeals pointed out, the "first step of the balancing test, the length of the delay, is the triggering factor because 'until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Wilson,* 250 F.3d at 394 (quoting *Barker,* 407 U.S. at 530); *see also Doggett,* 505 U.S. at 651-52. Moreover, as the Ohio Court of Appeals also recognized, if the length of the delay is found to be "presumptively prejudicial," it must be considered "as one factor among several" in determining whether the accused was deprived of his Sixth Amendment speedy trial right. *See Doggett,* 505 U.S. at 652 (citing *Barker,* 407 U.S. at 533-34).

Here, the Ohio Court of Appeals found that petitioner's Sixth Amendment speedy trial right was triggered when the initial criminal complaint was filed in July 2003 charging petitioner with murder. In accordance with a footnote in *Doggett* stating that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year," 505 U.S. at 652 n.1, the state appellate court further found the delay between the filing of the initial criminal complaint in July 2003 and petitioner's trial in February 2008 was "presumptively prejudicial."

13

Both of these findings are reasonable and, in any event, are not contested by petitioner.

However, the inquiry does not end there. Petitioner essentially contends in support of his constitutional claim that the "presumptively prejudicial" delay violated the Sixth Amendment's Speedy Trial Clause because the State failed to exercise "due diligence" by (1) allowing the initial criminal complaint and bond obligations imposed in August 2003 to remain pending "with no journal entry dismissing that case for a period in excess of four years;" and (2) delaying petitioner's arraignment for eighteen months until March 2007, after the indictment was returned in August 2005 charging petitioner with aggravated murder and the firearm specification. (*See* Doc. 1, pp. 4-5). The undersigned is not persuaded by petitioner's arguments.

First, the Ohio Court of Appeals concluded as a matter of state law that the "no bill" returned on November 19, 2003, as well as the discharge of the grand jury on that date, ended the trial court's jurisdiction in the initial criminal proceedings filed against petitioner, thereby terminating that case by "operation of law." According to the state court's interpretation of Ohio law, when the grand jury reported that no indictment was found against petitioner and was discharged in November 2003, petitioner's bail obligations were extinguished and the initial murder charge became a "legal nullity," and thus no longer remained "pending," as petitioner has claimed. This Court is bound by and must defer to the state court's determination of the state-law issue, which does not implicate federal constitutional concerns. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

Second, the Ohio Court of Appeals reasonably applied clearly-established standards determined by the Supreme Court in finding upon balancing the *Barker* factors that petitioner's constitutional speedy trial right was not violated by the State's two-year delay in pursuing and finally obtaining his indictment in August 2005 for aggravated murder with firearm specification.

14

As the state appellate court pointed out, the Supreme Court has "made it clear that 'different weights [are to be] assigned to different reasons' for delay." *Doggett,* 505 U.S. at 657 (quoting *Barker,* 407 U.S. at 531). On the one hand, "speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable," such as when the government "may need time to collect witnesses against the accused," which is given "great weight" in the State's favor and requires a showing of "specific prejudice to the defense." *Id.* at 656. On the other hand, "official bad faith in causing delay will be weighed heavily against the government," even in cases involving a relatively short delay. *Id.*

> The Court continued:
>
> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him....
>
> ....Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. *Thus, our toleration of such negligence varies inversely with its protractedness....*

*Id.* at 656-57 (emphasis added).

In this case, the record supports the Ohio Court of Appeals' determination that at least part of the State's delay in pursuing and obtaining an indictment, after the initial criminal charge resulted in a "no bill" in November 2003, stemmed from legitimate investigational concerns and the State's inability to collect witnesses. (*See* Doc. 4, Ex. 12, Tr. 8-9, 11-12). Moreover, it was reasonable for the court to further conclude in accordance with *Doggett* that any lack of diligence on the State's part did not weigh heavily against the State when balanced against the length of delay, which "was

not so protracted or intolerable as to warrant relief absent some particularized trial prejudice." (Doc. 4, Ex. 19, p. 19).

The Ohio Court of Appeals also reasonably found under the third *Barker* factor that petitioner's failure to assert his speedy trial right until July 26 2007, nearly five months after his March 2, 2007 arraignment, weighed "slightly" against petitioner and that the fourth *Barker* factor weighed "heavily" against him. As the court pointed out, the speedy trial right is designed to protect against "oppressive pretrial incarceration," to reduce the "anxiety and concern of the accused," and to "limit the possibility that the defense will be impaired" by dimming memories and loss of exculpatory evidence. *Barker,* 407 U.S. at 532; *see also Doggett,* 505 U.S. at 654. Petitioner had not shown that any of those interests were harmed by the two-year delay between the initial accusation, which did not involve a period of incarceration and ended with the filing of a "no bill" a few months later, and petitioner's indictment in August 2005. Therefore, it was reasonable for the Ohio court to conclude, after "carefully balancing" the four factors, that petitioner's Sixth Amendment speedy trial right was not violated by the two-year delay that occurred prior to his indictment in August 2005.

Finally, the Ohio Court of Appeals reasonably concluded, upon balancing the four *Barker* factors, that petitioner's Sixth Amendment speedy trial right was not violated based on the additional eighteen-month delay that occurred between his August 2005 indictment and March 2, 2007 arraignment. It appears from the record that an arrest warrant was issued on the indictment on August 30, 2005, within a few days after the indictment was returned. (*See* Doc. 4, Ex. 6, Exhibit "B"). As the state appellate court pointed out, petitioner has not disputed the trial court's finding in denying his motion to dismiss that he was a "fugitive avoiding apprehension" during the months prior to his arrest on November 9, 2006. (*See* Doc. 4, Ex. 9). The trial court's factual finding is

presumed correct under 28 U.S.C. § 2254(e)(1), *see supra* p. 1 n.1, and is supported by Detective Charles's testimony at the post-trial evidentiary hearing on the reopened motion to dismiss.[4] Therefore, it was reasonable for the Ohio Court of Appeals to find in assessing the reasons for the delay that petitioner was "more to blame than the State for the delay between his indictment and his subsequent arrest." (Doc. 4, Ex. 19, p. 21).

In addition, the Ohio Court of Appeals reasonably concluded that the third and fourth *Barker* factors also weighed against petitioner. Despite the fact that petitioner was informed of his indictment for aggravated murder with firearm specification on his arrest in November 2006, he did not assert his right to a speedy trial or request final disposition of the indictment prior to his arraignment while he was incarcerated in Franklin County on other charges. Moreover, petitioner has not demonstrated prejudice as a result of the delay. As the state appellate court reasonably found, petitioner's imprisonment during the few months after his arrest and prior to his arraignment fails to trigger any concerns about "oppressive pretrial incarceration" because he was also being held at that time on other charges. Furthermore, petitioner has not alleged or shown that he was impaired in his ability to present a defense or suffered more than "minimal" anxiety or concern during that time. Although the Ohio Court of Appeals found that the four-month delay between petitioner's arrest and arraignment was attributable to the State, it was reasonable for the court to conclude on balancing all the factors that petitioner's constitutional speedy trial right not violated in this case.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas corpus relief on his claim that "his constitutional right to a speedy trial has been violated by the

---

[4]Specifically, Charles testified at the hearing that he was "definitely involved in trying" to serve the arrest warrant after the indictment was returned and was present "with a fugitive task force in Columbus" when petitioner was "picked up on a probation violation" stemming from the indictment and was arrested in November 2006. (Doc. 4, Ex. 12, Tr. 14-15).

17

proceedings within the state Court." (Doc. 1, p. 4). The state courts' adjudication of petitioner's Sixth Amendment claim neither is contrary to nor involves an unreasonable application of clearly-established federal law, as determined by the Supreme Court in *Barker, Doggett,* and their progeny, and is based on a reasonable determination of the facts in light of the record evidence.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should issue with respect to petitioner's sole claim for relief, alleging a violation of his federal constitutional right to a speedy trial. Petitioner has stated a "viable claim of the denial of a constitutional right," and the issues presented herein are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and, therefore, should **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

                                                    /s/ *Stephanie K. Bowman*
                                                    United States Magistrate Judge

J:\Courtney\TSH\BRYANCC\2011 habeas\10-41denypet.speedytrial.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

NATHANIEL ALEXANDER,  
    Petitioner

Case No. 1:10-cv-41

vs

Dlott, C.J.  
Bowman, M.J.

WARDEN, ROSS CORRECTIONAL INSTITUTION,  
    Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).